UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAQUITA R. DIECKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:24 CV 38 RWS |
| ) | |
| LELAND DUDEK,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. | |

# **MEMORANDUM AND ORDER**

Laquita Dieckman brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  For the reasons set forth below, I will reverse the decision of the Commissioner and remand the case for further evaluation.

---

[1] Leland Dudek became the Commissioner of Social Security on February 19, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit.

**Procedural History**

Plaintiff Laquita Dieckman was born on February 24, 1972. (Tr. 285) She is currently 53 years old. Dieckman completed high school. (Tr. 299) In the past several years before she applied for disability benefits Dieckman worked as a housekeeper and a home health aide. (Tr. 288) Dieckman had employment earnings of $11,618.17 in 2015 and $15,319.24 in 2016. (Tr. 275) The last time she had gainful employment was on December 23, 2016. (Tr. 299)

Dieckman protectively filed a Title II application for a period of disability and disability insurance benefits on November 25, 2019. (Tr. 254-255) She also filed a Title XVI application for supplemental security income on February 13, 2020. (Tr. 256-258) She alleged her disability began on February 7, 2019, later amending that onset date to February 19, 2019. (Tr. 10, 256) Dieckman's applications were initially denied on October 15, 2021. (Tr. 144-145) The applications were denied again upon reconsideration on February 8, 2022. (Tr. 146-147) On March 10, 2022, Dieckman filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 191-192) The ALJ held a telephone hearing on November 29, 2022. (Tr. 10-24)

In her Disability Report, completed on March 4, 2020, Dieckman asserted that the following conditions limit her ability to work: severe migraines; fibromyalgia; depression; anxiety; obsessive compulsive disorder; fear of germs

and bugs; post-traumatic stress syndrome; sleep apnea; glaucoma lost sight in right eye; and irregular heart rate. (Tr. 298) In her Function Report, completed on March 20, 2020, Dieckman asserted that the following conditions limit her ability to work: she has trouble walking; she has trouble thinking and with memory and writing; she has anxiety attacks when she is told she has to go to the doctors or to the store; she hates germs; her body hurts and she has swelling throughout due to fibromyalgia; and she gets migraines and sometimes nausea. (Tr. 330) At the hearing before the ALJ, Dieckman testified that in her previous work as a home health aide she would shop for, do laundry for, and help elderly clients with their daily activities including bathing and dressing them. (Tr. 47)

Dieckman stated that she gets migraines six to eight times per month but medication helps an she tries to catch them at their onset to reduce their severity. (Tr. 49-50) Noises and stress can trigger her migraines. (Tr. 50) She takes medications in an attempt to reduce the frequency of her migraines but when they occur she needs to be a dark, quiet place like her room for at least hour up to three hours. Any sound bothers her when she has a migraine. (Tr. 52-53) Her obsessive compulsive disorder can be triggered if she does not clean things in a certain order and way. (Tr. 50-51) She gets depressed because she is not able to do things she used to be able to do. Her post-traumatic stress syndrome (PTSD) can be triggered by certain "sounds, noises, things that I react to that a normal person wouldn't."

She sees a therapist and once a week talks to a case worker on Zoom about these issues. (Tr. 51)  Her medications for her depression and PTSD make her very fatigued and tired.  Dieckman reported that she prepares crock pot meals and sometimes does light cleaning.  (Tr. 50, 362)  If she is able to do laundry it takes her the whole day with frequent breaks.  (Tr. 362)  Her husband and children usually do the shopping because she has a hard time walking and can only walk short distances.  (Tr. 52)  If no one else is available she can drive herself short distances to appointments.  She attends church on Zoom because her anxiety is too bad to attend in person.  (Tr. 52)  She has trouble with focusing and concentrating. Sometimes she forgets to pay bills and can easily be distracted.  (Tr. 54)   She has pain in her left shoulder.  She can lift her left arm to her head / ear but above that her pain is too great.  (Tr. 56)  She has sinus tachycardia which can cause her heart to beat rapidly / flutter perhaps once a day.  (Tr. 56)  Dieckman testified her fibromyalgia can cause pain everywhere on her body especially if someone presses their fingers against her too hard.  It also causes her to be fatigued and lack concentration.  (Tr. 57)

On February 22, 2023, the ALJ issued a decision finding that Dieckman was not disabled and that she could perform light-duty, unskilled occupations.  (Tr. 23-24)  On November 29, 2023, the Appeals Council denied plaintiff's request for

review. (Tr. 1-6) The ALJ's decision is now the final decision of the Commissioner. 42 U.S.C. §§ 405(g).

In this action for judicial review, Dieckman contends that the ALJ erred in relying on the testimony of the vocational expert (VE) without resolving an alleged conflict between the VE testimony and the Dictionary of Occupational Titles (DOT). Dieckman also assets that the ALJ failed to incorporate all of her limitations in the hypothetical to the VE. (ECF # 17) Dieckman requests that I reverse the Commissioner's final decision and remand this matter for further evaluation. For the reasons that follow, I will grant Dieckman's request to remand this matter for further proceedings.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Dieckman's statement of material facts (ECF # 18) which have been admitted to by the Commissioner (ECF # 23). Additional facts will be discussed as needed to address the parties' arguments.

## Discussion

A.  Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552,

5

555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[2]  If not, the disability analysis proceeds to the second step.  In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments,

---

[2] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)).  'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience."  (Tr. 12.)

6

meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends.  If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.[3]  If so, the claimant is not disabled.  If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only

---

[3] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

7

– such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is

8

uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[4] When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.   ALJ's Decision

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

In his written decision, the ALJ found that Dieckman had not engaged in substantial gainful activity since April 19, 2019, the alleged onset of her disability. (Tr. 25)  The ALJ found that Dieckman had the following severe impairments: morbid obesity; fibromyalgia; degenerative disc disease of the cervical spine; migraine headaches; chronic fatigue syndrome; insomnia; a depressive disorder; obsessive-compulsive disorder; and post-traumatic stress disorder.  The ALJ found the following non-severe impairments: hypertension; left shoulder impingement; glaucoma; tachycardia; mitral valve prolapse; obstructive sleep apnea; asthma; irritable bowel syndrome; and gastroesophageal reflux disease.  (Tr. 13) The ALJ determined that Dieckman had mental impairments but that she had no more than moderate limitations in each functional area.[5]  (Tr. 14-15)  The ALJ determined that Dieckman's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13)  The ALJ found Dieckman to have the residual functional capacity (RFC) to perform light work with the following limitations:

> she can never climb ladders, ropes and scaffolds. She can occasionally climb ramps and stairs. She can occasionally stoop, crouch, kneel and crawl. She can have occasional exposure to irritants, such as fumes, odors, dust, gases and poor ventilation. She should avoid noise above a moderate level as defined by Appendix D of the Selected Characteristic of Occupations (SCO). She can have occasional exposure to bright, flickering or flashing lights. She should avoid all

---

[5] The mental functional areas are: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adaptation or self management.

exposure to unshielded moving mechanical parts and unprotected heights. She can have occasional exposure to heat, cold, humidity and vibrations. She is able to understand, remember and carry out simple instructions in the performance of simple, routine and repetitive tasks with no specific production rate work such as assembly line work or work that requires hourly quotas. She can use judgment to make simple work-related decisions. She can have occasional changes in routine work settings. She is capable of only superficial contact with the public (where superficial is defined as contact that is incidental and not an essential function of the job) and only occasional interaction with co-workers and supervisors. She is limited to jobs in which she could work in proximity to but not in coordination with co-workers and supervisors.

(Tr. 15)   The ALJ found that Dieckman's "medically determinable impairments could reasonably be expected to cause some symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence in the record for the reasons explained in this decision." (Tr. 16)   The ALJ's decision recapped Dieckman's medical records and concluded that they did not contain sufficiently convincing evidence that Dieckman suffers from any debilitating condition that would prevent her from performing in the occupations identified by the vocational expert. (Tr. 16-22)

C.   Dieckman's Objections to the ALJ's Decision

   *Alleged conflict with the RFC and VE job designations*

   Dieckman contends that the ALJ erred by failing to resolve an alleged conflict between Dieckman's RFC, the VE's testimony, and the Dictionary of

11

Occupational Titles (DOT). "[A]n ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." Thomas v. Berryhill, 881 F.3d 672, 677 (8th Cir. 2018) (quoting Moore v. Colvin, 769 F.3d 987, 989-90 (8th Cir. 2014)). When vocational evidence provided by a VE "is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE ... evidence to support a determination or decision that the individual is or is not disabled." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If the VE's testimony "appears to conflict with the job requirements set forth in the relevant DOT listings and the ALJ did not resolve the conflict, 'the vocational expert's testimony is not substantial evidence to support a denial of benefits.'" Galloway v. Kijakazi, 46 F.4th 686 at 689 (quoting Stanton v. Comm'r, Soc. Sec. Admin, 899 F.3d 555, 557 (8th Cir. 2018)).

Dieckman asserts that the three jobs identified by the VE conflict with the ALJ's determination of Dieckman's RFC. The first job the VE identified was that of Laundry Folder. The DOT describes this as a job which is presumably performed in a commercial laundry. The DOT description for this job refers to the Guide for Occupational Exploration: 06.04.35 which states this job requires exposure to constant humidity. Dieckman's RFC states that she should have only occasional exposure to humidity. Dieckman argues that the ALJ failed to resolve

12

this conflict.  The Commissioner concedes this point that the ALJ erred by not questioning the VE in an attempt to resolve this apparent conflict.  However, the Commissioner asserts that the other two jobs identified by the VE do not conflict with Dieckman's RFC.

Dieckman asserts that the jobs of Bakery Worker and Housekeeper both conflict with her RFC.  The RFC stated that Dieckman can have no specific production rate work, such as assembly line work or work that requires hourly quotas, and she is limited to jobs in which she can occasionally work in proximity to, but not in coordination with, coworkers.  Dieckman argues that the work of a Bakery Worker under DOT Code 524.687-018 conflicts with her RFC.  The DOT describes that job as follows:

> Loads wire racks with cookies, crackers, and wafers preparatory to their being dipped in icing: Removes wire rack from overhead trolley conveyor and places products on rack. Lifts and hooks rack to conveyor. May impale products on pins of wire rack and be designated Sticker (bakery products).

Dieckman asserts that this job necessarily entails production line work and quotas in addition to working in coordination with co-workers.  Dieckman argues that this is in direct conflict with her RFC and the ALJ failed to resolve this issue with the VE.  The Commissioner points out that the DOT description of Bakery Worker

13

does not make any reference to pace or to working on a production line.[6] Nor does the description of this job require coordinating with co-workers or tandem work. I find that this job does not conflict with Dieckman's RFC.

Dieckman argues that the job of housekeeper also conflicts with her RFC because the DOT this job requires "rendering personal assistance to patrons." Dieckman's RFC limits her to "only superficial contact with the public (where superficial is defined as contact that is incidental and not an essential function of the job)."

The Commissioner argues that Dieckman's assertion is not correct because the housekeeper job involves working with things rather than people. DOT 323.687-014 describes that job as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

Dieckman's position is without merit because this job does not indicate anything more that superficial contact with the public. See Chismarich v. Berryhill, No. 4:15CV1575 CDP, 2017 WL 476408, at *6 (E.D. Mo. Feb. 6, 2017) ("This Court

---

[6] A separate Bakery Worker job that does involve working on a conveyer-belt line is found in DOT 524.687-022. The VE did not identify that job in this case.

has specifically found that a job that may include some interaction with patrons, such as that defined in DOT 323.687–014, is not inconsistent with an RFC limitation to casual and infrequent contact with others.").

*Alleged conflict between medical record and RFC*

Dieckman argues that the ALJ's RFC determination that Dieckman should avoid only jobs that involve noise above a loud level is not supported by substantial evidence.  Both of the Commissioner's medical consultants opined that Dieckman should avoid even moderate exposure to noise because of her migraines.  On October 15, 2021, Paul Ross, DO and on February 22, 2022, Dennis McGraw, DO reviewed the evidence available at the time and both made the same recommendation.  (Tr. 111 and 167)  The ALJ found these doctors' medical opinions "generally persuasive since they are consistent with the findings during the claimant's July 2021 consultative examination. However, the [ALJ] also found that the record supports limiting [Dieckman's] exposure to loud noise and bright lights to further accommodate her migraine headache complaints."  (Tr. 21)

Dieckman asserts that the ALJ's decision did not provide any analysis why he rejected these doctors' opinions that Dieckman should avoid even moderate noise and was limited to only avoiding loud noise.  The "Identification Key" at the end of the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, defines moderate noise as Noise Intensity Level

15

3. The jobs identified by the VE, Bakery Worker and Housekeeper both require working at a moderate, noise level 3.

The Commissioner argues that although the ALJ did not specifically address his rejection of the consulting doctor's noise level limitation or to discuss evidence in support of concluding that Dieckman had the RFC to tolerate moderate noise the ALJ did not err in his conclusion. The Commissioner asserts that the ALJ's decision and the record contains substantial evidence showing that Dieckman's migraines were becoming less frequent, medications were helping to reduce her headaches, and her neurological and mental-status examinations throughout the treatment notes were routinely normal. Yet nothing in these treatment notes indicates that Dieckman's migraines would not be triggered by moderate noise as opined by Dr.s Ross and McGraw. I find that the ALJ's resultant RFC limiting Dieckman's noise level exposure to loud noise is not supported by the record. As a result, because the ALJ failed to properly evaluate Dieckman's RFC regarding noise exposure, the administrative decision is not supported by substantial evidence and this matter will be remanded for additional evaluation.

## Conclusion

Based on the complete record in this case, I find that the ALJ's decision finding Laquita Dieckman is not disabled is not supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that**, pursuant to sentence-four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings in accordance with this memorandum and order.

**IT IS FURTHER ORDERED that** The Clerk of Court shall substitute Leland Dudek, Acting Commissioner of Social Security, as the defendant in this matter.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2025.